ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Feb-20 20:50:04
60CV-19-2
C06D02 : 33 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION, SECOND DIVISION

YVONNE LAWRENCE LEE, individually and
as ADMINSTRATRIX OF THE ESTATE OF
KENNETH LAWRENCE, DECEASED                        PLAINTIFF

VS.                    CASE NO.: 60CV-19-2

CHARLES "DOC" HOLLADAY, individually and
in his official capacity as former Sheriff
of Pulaski County; MIKE SYLVESTER,
individually and his official capacity as
former Chief of Detention of the PULASKI COUNTY
REGIONAL DETENTION FACILITY; DR. KAREN CHASE,
individually and in her official capacity,
TURN KEY HEALTH CLINICS, LLC, ERIC HIGGINS, in
his official capacity as Sheriff of Pulaski
County; JOHN and JANE DOES 1 – 10            DEFENDANTS

## FIRST AMENDED AND SUBSTITUTED COMPLAINT

COMES NOW the plaintiff, Yvonne Lawrence Lee, as Administrator of the Estate of Kenneth Lawrence, by and through undersigned counsel, and for her First Amended and Substituted Complaint against the Defendants, hereby alleges and states as follows:

## JURISDICTION AND VENUE

1.   This is an action in tort and for violations of Federal and State Constitutional Rights.  Relief is pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and the Arkansas Constitution Article II, Section II and the Arkansas Civil Rights Acts, codified at Ark. Code Ann. § 16-123-105, and common


EXHIBIT
2

law tort of negligence and wrongful death.    Jurisdiction and venue is proper in this Court as the cause of action arose Pulaski County, Arkansas.

2.    This is also an action seeking declaratory relief pursuant to Ark. Code Ann. § 16-111-104, part of the Declaratory Judgment Act, and 28 U.S.C.S. § 2201 to declare the rights and other relations between the parties and for damages.

## PARTIES

3.    The Plaintiff, Yvonne Lawrence Lee, during all times mentioned, and continuing up to the present date is a citizen of the United States, and was at all times relevant to this Complaint, a resident of the City of North Little Rock, County of Pulaski, and State of Arkansas. She was appointed administrator of the Estate of Kenneth Lawrence on September 29, 2017 by the Circuit Court of Pulaski County, Arkansas, Case No. 60PR-17-1436, and brings this action individually and on behalf of the Estate of Kenneth Lawrence and his heirs.

4.    At all relevant times, defendant Charles "Doc" Holladay (hereinafter referred to as "Holladay" or "Sheriff Holladay") was the legally constituted Sheriff of Pulaski County, Arkansas and functioned in that capacity at all times relevant hereto. Furthermore, as Sheriff, defendant Holladay was at all relevant times in question the chief decision and policy maker for the Pulaski County Regional Detention Facility

("PCRDF" or "County Jail").  And, as Sheriff of Pulaski County, it was the duty of defendant Holladay to properly supervise the personnel under his control so as not to cause injuries to, or deprive the civil rights of persons the sheriff's department is obligated to protect.  Defendant, Eric Higgins, was sworn in as the duly elected and constituted Sheriff of Pulaski County, Arkansas on January 1, 2019.  He is sued in his official capacity.

5.  At all relevant times pertinent, defendant Mike Sylvester was the Chief over the penal or lockup aspect of the PCRDF.  At all relevant times pertinent, defendant Mike Sylvester, was the jail administrator.

6.  Pulaski County is a political subdivision of the State of Arkansas under the name of which the individual defendants performed all acts and omissions alleged herein.

7.  Defendant, Dr. Karen Chase, is a medical doctor presently practicing in Pulaski County, Arkansas.  At all times mentioned in this pleading, Defendant Dr. Chase was a medical doctor, and was licensed to practice in such profession as provided by the laws of the State of Arkansas.

8.  Defendant Dr. Chase held herself out to possess the degree of skill, ability, and learning common to a doctor in the community.  Defendant, Turn Key Health Clinics, LLC. is a foreign company authorized to do and doing business in Pulaski

3

County, Arkansas.   Upon information and belief, it is believed that it entered into a contract with defendant Holladay and Pulaski County, Arkansas to provide health care services to inmates at the PCRDF.   It is responsible for the contract with defendant Dr. Chase and other medical care providers at the PCRDF.   It is responsible for their actions under a contract theory and under the theory of *respondeat superior*.   Further, it may not claim immunity.

9.   Defendant, John Doe 1, is an employee of the Pulaski County Regional Detention Facility.   Defendant, John Doe 1, upon information and belief is the Deputy Sheriff that struck Kenneth Lawrence in the face and had other physical contract with Kenneth Lawrence that caused injuries to his person.   This matter is under some form of investigation and therefore, the Pulaski County Sheriff's Department has refused to release reports which would provide the name of the Deputies involved. Once his name is determined, these pleadings will be amended to add him in as a party.

10.   Defendant, John Doe 2, is an employee of the Pulaski County Regional Detention Facility.   Defendant, John Doe 2, upon information and belief is the Deputy Sheriff that administered capsicum (Pepper Spray) to Kenneth Lawrence and had other physical contract with Kenneth Lawrence that caused injuries to his person.   This matter is under some form of investigation and

therefore, the Pulaski County Sheriff's Department has refused to release reports which would provide the name of the Deputies involved. Once his/her name is determined, these pleadings will be amended to add him/her in as a party.

11.   Defendants Jane and John Does 3 though 10 are the currently unknown Pulaski County Detention Facility employees, medical, nursing, and/or other healthcare providers and entities, insurers, and employees or agents of PCRDF, entities, and individuals, charged with protecting and treating Kenneth Lawrence at the PRCDF. Plaintiff has attached hereto the affidavit of Plaintiff's attorney attesting that the identities of Jane and John Does 1 through 10 are unknown pursuant to A.C.A. § 16-56-125.

## FACTUAL ALLEGATIONS

12.   At all times and places alleged herein the individual defendants and each of them, were acting as agents of the defendant, the Pulaski County.

13.   On June 8, 2017 at approximately 9:20 a.m., Kenneth Lawrence arrived at the Pulaski County Regional Detention Facility. He was brought into the facility after being arrested on a Probation Revocation warrant.

14.   At approximately 10:00 a.m., Kenneth Lawrence is seen on surveillance tape at the PCRDF entering the medical room to talk to the nurse prior to being booked into the PRDF. Shane

5

Pomaybo electronically signed the Medical Intake Records that were conducted on Kenneth Lawrence.   On the form, Pomaybo checked "Yes" in answer to the question "Is the patient currently taking any medications?"  The form contained the next question:    "If yes to above question, list all current medications including dosages, frequency, last time taken, and name of pharmacy:" Pomaybo answered as follows:   "unk seizure medication 2x daily last dose this morning; Walmart Cabot."

15. Kenneth Lawrence suffered from a seizure disorder which required that he take Keppra twice a day to control his seizures.   Keppra is an antiepileptic drug available as 250 mg (blue), 500 mg (yellow), 750 mg (orange), and 1000 mg (white) tablets and as a clear, colorless, grape-flavored liquid (100 mg/mL) for oral administration.   There is a specific warning with regards to Keppra.   "Stopping KEPPRA suddenly can cause serious problems. Stopping a seizure medicine suddenly can cause seizures that will not stop (status epilepticus)."

16. The defendants knew or should have known about Kenneth Lawrence's seizure condition which was being treated with Keppra.   Kenneth Lawrence had previously had a seizure while incarcerated at the PCRDF.   On the first page of the Intake Form, there is the following question:   "Have you ever been incarcarated at this facility? If yes, provide year:"   Pomaybo responded:  "Yes" "2017"

6

17. On May 4, 2016, LPN M. Mannis, completed an Altercation Form in which she documented that "i/m (inmate) laying on the floor having seizure like activity." On May 4, 2016 a screening form indicates that Kenneth Lawrence's current medication was "Keppra."

18. The Intake Form signed by Pomaybo contains the following notation: Approved by: Mary Bahan Approved on: 6/8/2017 2:45:29 PM "verified keppra 250mg two tabs bid. intake forwarded to dr chase for med approval"

19. There are Medical Administration Records that are kept on inmates at the PCRDF. Kenneth Lawrence's medical records do not contain any record of administration of Keppra even though the defendants knew he was required to take it two times each daily and that the last dosage of Keppra was taken prior to his arrest on the morning of June 8, 2017.

20. On June 8, 2017, at approximately 11:35 a.m., Kenneth Lawrence was taken to the D Unit of the PCRDF. He was assigned to cell D-109.

21. On June 9, 2017, sometime after 8:00 a.m., Kenneth Lawrence suffered a seizure.

22. During an epiplitic seizure, there are commonly known rules that have to be followed: 1. Keep other people out of the way. 2. Clear hard or sharp objects away from the person. 3. Don't try to hold down or stop the movements. 4. Place on

individual on his side, to help keep his airway clear.  5.  Look at your watch at the start of the seizure, to time its length. 6.  Don't put anything in his mouth.  Indeed, these were the exact rules followed during Kenneth Lawrence's previous seizure at the PCRDF in 2016.  He was found on the floor and left unrestrained until the seizure had stopped.

23.  However, during the seizure, Kenneth Lawrence suffered on June 9, 2017, John Doe 1, struck Kenneth Lawrence and attempted to restrain him.  John Doe 2 administered Pepper spray.  Pepper spray causes burning in the throat, wheezing, dry cough, shortness of breath, gagging, gasping and the inability to breathe or speak.  John Doe 3 administered Thorazine to Kenneth Lawrence's right shoulder on direction from defendant Dr. Chase.  Thorazine is an anti-psychotic medication.  It works by changing the actions of chemicals in your brain.

24.  Kenneth Lawrence was strapped to a restraint chair which made it impossible for him to move his arms or legs.  In addition, a spit mask was place on his head.  This mask covered his entire face.  And, the spit mask restricted his ability to breathe.  He had been administered pepper spray.  Pepper spray makes it difficult to breath.  In addition, pepper spray requires steps for the individual to be properly decontaminated: Since the spray is oil-based, people who have it on their skin are advised not to touch the affected area.  Touching the

8

solution can easily spread it to other areas of the body. If pepper spray enters the eyes, blinking rapidly might help to flush it out. Washing with hand soap, shampoo, or dish soap can break up the oil. After that, the area should be rinsed with water. Baby shampoos can be useful for washing spray from the eye area. People who have been sprayed may instinctively want to douse themselves in water. This can provide instant but short-lived relief. Oil does not mix with water on a molecular level, so washing the skin with water alone will not remove the solution. Instead of properly decontaminating Kenneth Lawrence, the defendants put a spit mask on his face which further acted as a means of suffocating him. Kenneth Lawrence was then transported out of the D Unit to the medical unit.

25. Not surprisingly, Kenneth Lawrence went into cardiac arrest and stopped breathing. According to a note by defendant Dr. Chase, "patient was down for approx. 9 minutes with no consistent pulse."

26. MEMS was called and Kenneth Lawrence was transported to UAMS. Before he could be taken out of the facility by MEMS, MEMS personnel had to stop to resuscitate him.

27. PCRDF had emergency contact information on the Intake Form. Plaintiff's name and phone number was listed as an emergency contact. However, defendants misinformed and mislead Plaintiff as to Kenneth Lawrence's whereabouts. He lay in the

hospital at the point of death, with no one to be there with him.

28. On June 19, 2017, after a valiant fight, Kenneth Lawrence died. An autopsy performed by the Arkansas State Crime Laboratory medical examiner lists his cause of death as Anoxic Encephalopathy due to Undetermined Etiology. Anoxic Encephalopathy is a condition where brain tissue is deprived of oxygen and there is global loss of brain function. It list the contributory causes as struggle restraint and capsicun (pepper) spray exposure.

29. Kenneth Lawrence was a pretrial detainee. A detainee may not be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535-536 (1979. Due process rather than Eighth Amendment applies to pretrial detainees because such detainees may not be punished at all. *Bell,* 441 U.S. at 537 n. 16. *Bell* held that detainees cannot be punished, and, thus, rigorous Eighth Amendment standards should not apply in assessing their conditions of confinement. Due process limits the government's power to deprive plaintiff of personal liberty. *United States v. Neal*, 679 F.3d 737, 740 (8th Cir. 2012). Freedom from bodily restraint is at the "core" of the due process clause. *Heidemann v. Rother*, 84 F.3d 1021, 1028 (8th Cir. 1996). At its heart, the Due Process Clause protects the

individual from arbitrary government action. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

30. The test often used in determining whether action by the executive branch of government is arbitrary is whether the conduct shocks the conscience. *United States v. Salerno*, 481 U.S. 739, 750-751 (1987). Conduct deliberately intended to cause some unjustifiable harm will generally shock the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Conduct involving recklessness or gross negligence is actionable under the Due Process Clause. *Id.* A government official will have engaged in conscience-shocking behavior not only by causing intentional harm, but also by acting with deliberate indifference to an individual's serious medical or other needs. *Id.*

31. In *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the United States Supreme Court held that where officials make a deliberate decision to deny objectively necessary medical treatment, no further mens rea should be necessary to prove a substantive due process violation. Nonetheless, most appellate courts have continued to impose the Eighth Amendment's criminal subjective mens rea standard, even after *Kingsley*. In *Bailey v. Feltmann*, 810 F.3d 589, 593-94 (8th Cir. 2016), the Eighth Circuit held that, although *Kingsley* adopted an objective reasonableness standard for arrestees claiming excessive force,

11

the law regarding denial of medical care is not clear, and thus, to survive qualified immunity, pretrial detainee must prove deliberate indifference under the Eighth Amendment standard, and plaintiff failed to produce sufficient evidence to show that defendant had actual knowledge of an objectively serious medical need and yet deliberately disregarded it.   The Eighth Circuit has held that a pretrial detainee who alleged a violation of his right to medical care must meet Eighth Amendment deliberate indifference standard, and merely demonstrating that prison doctor committed medical malpractice did not meet this standard absent evidence that the doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care. *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014)

32.   In *Shepherd v. Washington County*, 331 Ark. 480, 962 S.W.2d 779 (1998), the Arkansas Supreme Court rejected the federal standard of "deliberate indifference" for cases arising under the Arkansas Civil Rights Act. Instead, The Court opted for a standard of "conscious indifference," as defined by this court's previous opinions. In order to demonstrate that a defendant acted with conscious indifference, a plaintiff must show that the defendant "knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued

12

such conduct in the reckless disregard of the consequences from which malice can be inferred." *Shepherd*, 331 Ark. at 504, 962 S.W.2d 779 (quoting *Dongary Holstein Leasing, Inc. v. Covington*, 293 Ark. 112, 732 S.W.2d 465 (1987), rev'd on other grounds, *Quinn Companies, Inc. v. Herring-Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989)). Therefore, malice can be inferred either from conscious indifference to the consequences of one's actions or from a reckless disregard of those same consequences. *Id.* A medical need is serious if it is a condition that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Williams v. Arkansas Dept. of Correction*, 207 S.W.3d 519, 362 Ark. 134 (Ark., 2005)

## FEDERAL CIVIL RIGHTS VIOLATIONS UNDER 42 USC § 1983, STATE CIVIL RIGHTS VIOLATIONS UNDER THE ARKANSAS CIVIL RIGHTS ACT AND THE ARKANSAS CONSTITUTION

32. The Plaintiff adopts by reference the allegations contained in paragraphs 1 through 31 above.

## FEDERAL CLAIMS:  DR. KAREN CHASE, TURNKEY, UNKNOWN JOHN DOE MEDICAL CARE DEFENDANTS

33. The above recited acts and omissions of Defendants, while each was acting under color of authority and in their individual and official capacities, respectively constitute a deprivation of the Kenneth Lawrence's substantive due process rights as guaranteed by the 14th Amendment to the United States

Constitution. Such acts of Defendants while acting within the color of their authority are sufficient to invoke an action under 42 U.S.C. § 1983 against them for which the Plaintiff seeks damages as set forth herein above.

34. These Defendants were aware of an objectively serious medical need which Kenneth Lawrence had, in that, they knew that:

a. Detainees in the PRCDF have medical conditions that require medication that they are taking that cannot be abruptly stopped without causing serious medical harm;

b. Stopping Keppra suddenly from individuals that are taking it to control seizures can cause serious problems.

c. Stopping a seizure medicine such as Keppra suddenly can cause seizures that will not stop (status epilepticus);

d. Kenneth Lawrence suffered from a seizure disorder which required that he take Keppra twice a day to control his seizures;

e. Kenneth Lawrence had only taken one (1) of the two dosages of Keppra that he needed to take to control his seizures;

f. Kenneth Lawrence had previously had a seizure in the PCRDF during an incident when he had not been prescribed Keppra;

g.    During an epiplitic seizure, there are commonly known rules that have to be followed: 1. Keep other people out of the way.  2.  Clear hard or sharp objects away from the person.  3.  Don't try to hold down or stop the movements.  4. Place on individual on his side, to help keep his airway clear. 5.  Look at your watch at the start of the seizure, to time its length.  6.  Don't put anything in his mouth.  These were the exact rules followed during Kenneth Lawrence's previous seizure at the PCRDF in 2016.  He was found on the floor and left unrestrained until the seizure had stopped.

h.    Thorazine is an anti-psychotic medication.  It works by changing the actions of chemicals in your brain.

g.    Pepper spray causes burning in the throat, wheezing, dry cough, shortness of breath, gagging, gasping and the inability to breathe or speak.

h.    Pepper spray requires steps for the individual to be properly decontaminated:  Since the spray is oil-based, people who have it on their skin are advised not to touch the affected area.  Touching the solution can easily spread it to other areas of the body.  If pepper spray enters the eyes, blinking rapidly might help to flush it out.  Washing with hand soap, shampoo, or dish soap can break up the oil. After that, the area should be rinsed with water. Baby shampoos can be useful for washing spray from the eye area.  People who have

been sprayed may instinctively want to douse themselves in water. This can provide instant but short-lived relief. Oil does not mix with water on a molecular level, so washing the skin with water alone will not remove the solution.

35.     These defendants actions were in deliberate indifference to the Plaintiff's health and safety needs. In addition, these actions were so inappropriate as to evidence intentional maltreatment and a refusal to provide essential care as evidenced by:

a.     The defendants failed to insure that Kenneth Lawrence received any dosages of Keppra which he needed to control his seizures;

b.     Despite being aware of Kenneth Lawrence's seizure condition, in deliberate indifference, Defendants took no action to see to it that people were kept out of his way; to clear hard or sharp objects away from him; to prevent efforts to hold him down or to stop his movements; to place him on his side; to help keep his airway clear; to document the start time or length of his seizure; to insure that nothing was put in his mouth.

c.     The Defendants allowed Kenneth Lawrence to be pepper sprayed;

d.     After Kenneth Lawrence was pepper sprayed, the defendants failed to clear Kenneth Lawrence's airways from pepper spray;

e.   After Kenneth Lawrence was pepper sprayed having suffered a seizure, the defendants failed to prevent the guards from putting a spit mask on him;

f.   Despite the documented history of seizures, the fact that he had not been given Keppra, these Defendants administered Thorazine to Kenneth Lawrence.

## STATE CLAIMS:  DR. KAREN CHASE, TURNKEY, UNKNOWN JOHN DOE MEDICAL CARE DEFENDANTS

36.   The above recited acts and omissions of Defendants, while each was acting under color of authority and in their individual and official capacities, respectively constitute a deprivation of the Kenneth Lawrence's rights under Ark. Const. Art. 2 § 2  which provides that: "All men are created equally free and independent, and have certain inherent and inalienable rights; amongst which are those of enjoying and defending life and liberty; of acquiring, possessing and protecting property, and reputation; and of pursuing their own happiness"  and  the Arkansas Civil Rights Act which is codified at Ark. Code Ann. § 16-123-105 which provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party

injured in an action in circuit court for legal and equitable relief or other proper redress."

37. The Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct would naturally or probably result in injury and that they continued such conduct in the reckless disregard of the consequences from which malice can be inferred. The Defendants were consciously indifferent to the consequences of their actions and they recklessly disregarded those same consequences. This was evident by the following:

a. Detainees in the PRCDF have medical conditions that require medication that they are taking that cannot be abruptly stopped without causing serious medical harm;

b. Stopping Keppra suddenly from individuals that are taking it to control seizures can cause serious problems.

c. Stopping a seizure medicine such as Keppra suddenly can cause seizures that will not stop (status epilepticus);

d. Kenneth Lawrence suffered from a seizure disorder which required that he take Keppra twice a day to control his seizures;

e. Kenneth Lawrence had only taken one (1) of the two dosages of Keppra that he needed to take to control his seizures;

f.   Kenneth Lawrence had previously had a seizure in the PCRDF during an incident when he had not been prescribed Keppra;

g.   During an epiplitic seizure, there are commonly known rules that have to be followed: 1. Keep other people out of the way.   2.   Clear hard or sharp objects away from the person. 3.  Don't try to hold down or stop the movements.   4. Place on individual on his side, to help keep his airway clear. 5.  Look at your watch at the start of the seizure, to time its length.  6.  Don't put anything in his mouth.   These were the exact rules followed during Kenneth Lawrence's previous seizure at the PCRDF in 2016.  He was found on the floor and left unrestrained until the seizure had stopped.

h.   Thorazine is an anti-psychotic medication.   It works by changing the actions of chemicals in your brain.

i.   Pepper spray causes burning in the throat, wheezing, dry cough, shortness of breath, gagging, gasping and the inability to breathe or speak.

j.   Pepper spray requires steps for the individual to be properly decontaminated:   Since the spray is oil-based, people who have it on their skin are advised not to touch the affected area. Touching the solution can easily spread it to other areas of the body.   If pepper spray enters the eyes, blinking rapidly might help to flush it out.   Washing with hand

19

soap, shampoo, or dish soap can break up the oil. After that, the area should be rinsed with water. Baby shampoos can be useful for washing spray from the eye area.  People who have been sprayed may instinctively want to douse themselves in water. This can provide instant but short-lived relief. Oil does not mix with water on a molecular level, so washing the skin with water alone will not remove the solution.

k.   The defendants failed to insure that Kenneth Lawrence received any dosages of Keppra which he needed to control his seizures;

l.   Despite being aware of Kenneth Lawrence's seizure condition, in deliberate indifference, Defendants took no action to see to it that people were kept out of his way; to clear hard or sharp objects away from him; to prevent efforts to hold him down or to stop his movements; to place him on his side; to help keep his airway clear; to document the start time or length of his seizure; to insure that nothing was put in his mouth.

m.   The Defendants allowed Kenneth Lawrence to be pepper sprayed;

n.   After Kenneth Lawrence was pepper sprayed, the defendants failed to clear Kenneth Lawrence's airways from pepper spray;

o.   After Kenneth Lawrence was pepper sprayed having suffered a seizure, the defendants failed to prevent the guards from putting a spit mask on him;

p.   Despite the documented history of seizures, the fact that he had not been given Keppra, these Defendants administered Thorazine to Kenneth Lawrence.

### FEDERAL CLAIMS:   DEPUTY SHERIFF JOHN DOE DEFENDANTS

38.   The above recited acts and omissions of Defendants, while each was acting under color of authority and in their individual and official capacities, respectively constitute a deprivation of the Kenneth Lawrence's substantive due process rights as guaranteed by the 14th Amendment to the United States Constitution. Such acts of Defendants while acting within the color of their authority are sufficient to invoke an action under 42 U.S.C. § 1983 against them for which the Plaintiff seeks damages as set forth herein above.

39.   These Defendants were aware of an objectively serious medical need which Kenneth Lawrence had, in that, they knew that:

a.   Detainees in the PRCDF have medical conditions that require medication that they are taking that cannot be abruptly stopped without causing serious medical harm;

b.   During an epiplitic seizure, there are commonly known rules that have to be followed: 1. Keep other people out

of the way.   2.   Clear hard or sharp objects away from the person.   3.   Don't try to hold down or stop the movements.   4. Place on individual on his side, to help keep his airway clear. 5.   Look at your watch at the start of the seizure, to time its length.   6.   Don't put anything in his mouth.   These were the exact rules followed during Kenneth Lawrence's previous seizure at the PCRDF in 2016.   He was found on the floor and left unrestrained until the seizure had stopped.

c.   Thorazine is an anti-psychotic medication.   It works by changing the actions of chemicals in your brain.

d.   Pepper spray causes burning in the throat, wheezing, dry cough, shortness of breath, gagging, gasping and the inability to breathe or speak.

e.   Pepper spray requires steps for the individual to be properly decontaminated:   Since the spray is oil-based, people who have it on their skin are advised not to touch the affected area.  Touching the solution can easily spread it to other areas of the body.   If pepper spray enters the eyes, blinking rapidly might help to flush it out.   Washing with hand soap, shampoo, or dish soap can break up the oil. After that, the area should be rinsed with water.  Baby shampoos can be useful for washing spray from the eye area.   People who have been sprayed may instinctively want to douse themselves in water. This can provide instant but short-lived relief. Oil does

not mix with water on a molecular level, so washing the skin with water alone will not remove the solution.

40.    These defendants actions were in deliberate indifference to the Plaintiff's health and safety needs. In addition, these actions were so inappropriate as to evidence intentional maltreatment and a refusal to provide essential care as evidenced by:

a.    Despite being aware of Kenneth Lawrence's seizure condition, in deliberate indifference, Defendants took no action to see to it that people were kept out of his way; to clear hard or sharp objects away from him; to prevent efforts to hold him down or to stop his movements; to place him on his side; to help keep his airway clear; to document the start time or length of his seizure; to insure that nothing was put in his mouth.

b.    The Defendant struck Kenneth Lawrence causing his nose to be fractured;

c.    The Defendants stood by and allowed the Kenneth Lawrence to be struck;

d.    The Defendant pepper sprayed Kenneth Lawrence;

e.    The Defendants allowed Kenneth Lawrence to be pepper sprayed;

f.    After Kenneth Lawrence was pepper sprayed, the defendants failed to clear Kenneth Lawrence's airways from pepper spray;

g. After Kenneth Lawrence was pepper sprayed having suffered a seizure, the Defendant put a spit mask on him;

h. After Kenneth Lawrence was pepper sprayed having suffered a seizure, the Defendants failed to prevent the Defendant from putting a spit mask on him;

i. Despite the documented history of seizures, the fact that he had not been given Keppra, these Defendants allowed Thorazine to be administered to Kenneth Lawrence.

## STATE CLAIMS: DEPUTY SHERIFF JOHN DOE DEFENDANTS

41. The above recited acts and omissions of Defendants, while each was acting under color of authority and in their individual and official capacities, respectively constitute a deprivation of the Kenneth Lawrence's rights under Ark. Const. Art. 2 § 2 which provides that: "All men are created equally free and independent, and have certain inherent and inalienable rights; amongst which are those of enjoying and defending life and liberty; of acquiring, possessing and protecting property, and reputation; and of pursuing their own happiness" and the Arkansas Civil Rights Act which is codified at Ark. Code Ann. § 16-123-105 which provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

24

by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress."

42. The Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct would naturally or probably result in injury and that they continued such conduct in the reckless disregard of the consequences from which malice can be inferred.   The Defendants were consciously indifferent to the consequences of their actions and they recklessly disregarded those same consequences.   This was evident by the following:

a.   The Defendants knew or should have known that detainees in the PRCDF have medical conditions that require medication that they are taking that cannot be abruptly stopped without causing serious medical harm;

b.   The Defendants knew or should have known that during an epiplitic seizure, there are commonly known rules that have to be followed: 1. Keep other people out of the way.   2. Clear hard or sharp objects away from the person.   3.  Don't try to hold down or stop the movements.  4.  Place on individual on his side, to help keep his airway clear.  5. Look at your watch at the start of the seizure, to time its length.  6.  Don't put anything in his mouth;

25

c.   The Defendants knew or should have known that Thorazine is an anti-psychotic medication.  It works by changing the actions of chemicals in your brain;

d.   The Defendants knew or should have known that pepper spray causes burning in the throat, wheezing, dry cough, shortness of breath, gagging, gasping and the inability to breathe or speak;

e.   The Defendants knew or should have known that pepper spray requires steps for the individual to be properly decontaminated:  Since the spray is oil-based, people who have it on their skin are advised not to touch the affected area. Touching the solution can easily spread it to other areas of the body.  If pepper spray enters the eyes, blinking rapidly might help to flush it out.  Washing with hand soap, shampoo, or dish soap can break up the oil. After that, the area should be rinsed with water. Baby shampoos can be useful for washing spray from the eye area.   People who have been sprayed may instinctively want to douse themselves in water. This can provide instant but short-lived relief. Oil does not mix with water on a molecular level, so washing the skin with water alone will not remove the solution;

f.   The Defendants knew or should have known that a detainee should not be struck while suffering a seizure in such a manner that it would fracture his nose;

26

g. The Defendants knew or should have known that a spit mask should not be placed on a detainees face after he has been pepper sprayed until after he has been properly decontaminated.

h. Despite being aware of Kenneth Lawrence's seizure condition, in deliberate indifference, Defendants took no action to see to it that people were kept out of his way; to clear hard or sharp objects away from him; to prevent efforts to hold him down or to stop his movements; to place him on his side; to help keep his airway clear; to document the start time or length of his seizure; to insure that nothing was put in his mouth.

i. The Defendant struck Kenneth Lawrence causing his nose to be fractured;

j. The Defendants stood by and allowed the Kenneth Lawrence to be struck;

k. The Defendant pepper sprayed Kenneth Lawrence;

l. The Defendants allowed Kenneth Lawrence to be pepper sprayed;

m. After Kenneth Lawrence was pepper sprayed, the defendants failed to clear Kenneth Lawrence's airways from pepper spray;

n. After Kenneth Lawrence was pepper sprayed having suffered a seizure, the Defendant put a spit mask on him;

o.   After Kenneth Lawrence was pepper sprayed having suffered a seizure, the Defendants failed to prevent the Defendant from putting a spit mask on him;

p.   Despite the documented history of seizures, the fact that he had not been given Keppra, these Defendants allowed Thorazine to be administered to Kenneth Lawrence.

### SUPERVISORY CLAIMS:  SHERIFF CHARLES "DOC" HOLLADAY; MIKE SYLVESTER; AND SHERIFF ERIC HIGGINS

43. These actions of the Defendants Holladay and Sylvester, amounted to intentional maltreatment or a refusal to provide essential care.   Sheriff Higgins is the present Sheriff and is only sued in his official capacity.

44.   The actions of the defendants were the result of Holladay's decisions and practices as Sheriff which were tantamount to official policies.

45.   Furthermore, these actions were the results of Holladay's failure in hiring, to train, and supervise said defendants. On other occasions, Detention officers under the direct control and supervision of Holladay, failed to protect other inmates who had suffered from medical conditions.   These failures to protect were failures in hiring, retention, instruction and training, control and/or supervise said officers and contractors are the results of Holladay's decisions as the chief policy and decision maker for the PRCDF as well as the

28

long standing usages, customs, practices and policies of the Detention Center.

46.   Kenneth Lawrence's right to medical treatment and prescribed medication for diagnosed health issues was well established at the time such that a reasonable officer or medical care provider would be aware of the standard.   In addition, Kenneth Lawrence's right to be free from restraints to his airway caused by pepper spray and spit masks was well established at the time such that a reasonable officer or medical care provider would be aware of that standard.

47.   These decisions were in derogation of the Kenneth Lawrence's rights and privileges protected by the 4th and 14th amendments to the U.S. Constitution, federal and state laws, Ark. Const. Art. 2 § 2, Ark. Const. Art. 2 § 6, Ark. Const. Art. 2 § 9, and the Arkansas Civil Rights Act (ACRA), codified at A.C.A. § 16-123-101 et seq.

48.   The defendants are not entitled to qualified immunity for their actions.

49.   The County, as a municipality, is not entitled to qualified immunity and is separately liable for the PRCDF's policies, usages, customs, practices and/or Holladay's decisions as the final decision and policy maker for the PRCDF which have the force and effect of law.

### TORT CLAIMS

50. The Plaintiff adopts by reference the allegations contained in paragraphs 1 through 49.

51. The foregoing actions by the defendants were negligent. The actions fell below the applicable standards of care. The defendants failed to properly protect the Kenneth Lawrence. The defendants failed to properly provide Kenneth Lawrence with the medication and housing needs.

52. As a result of the defendants actions, the Plaintiff was damaged. Plaintiff's damages were proximately caused by the actions of the defendants. To the extent they are covered by insurance, the defendants have waived sovereign immunity for the negligence claims.

53. Plaintiff demands a trial by jury.

### DECLARATORY RELIEF

54. Pursuant to Ark. Code Ann. § 16-111-104, part of the Declaratory Judgment Act, and 28 U.S.C.S. § 2201, Plaintiff requests that the Court determine the rights of Kenneth Lawrence under 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the Arkansas Constitution, and the Arkansas Civil Rights Act and that the Court declare the following, that under these constitutional provisions, laws and statutes:

a. Kenneth Lawrence had the right to adequate medical treatment which specifically included the right to access to medicine to control his seizures;

b. Kenneth Lawrence had the right to immediate and timely access to medicine needed to ameliorate, control and stop life threatening seizures;

c. Kenneth Lawrence had the right to be free from imposition of objects that restricted his breathing after being pepper sprayed;

d. Kenneth Lawrence had the right to be decontaminated after being pepper sprayed;

e. Kenneth Lawrence had the right to be free from the use of force when they are suffering from a seizure;

f. Kenneth Lawrence had the right to have the next of kin listed in his intake paperwork that were listed emergency contacts notified when he was taken unconscious, helpless and at the point of death from the facility to a hospital.

g. Defendants are not immune from suit.

55. Plaintiff reserves his right to amend this complaint.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment granting a declaratory judgment that the Defendants' acts, policies, and practices complained of herein, violated Plaintiff's rights secured by the due process clause of

31

the Fifth and Fourteenth Amendments and the rights secured by the Eighth Amendment to the United States Constitution; joint and several nominal, compensatory, and punitive damages against the Defendants for Plaintiff, reasonable attorneys' 42 U.S.C. § 1988 fees; and, all other proper and just relief, whether specifically prayed for herein or not.

Respectfully submitted,

**YVONNE LAWRENCE, ADMINISTRATOR
ESTATE OF KENNETH LAWRENCE**

s/ John W. Walker
John W. Walker
Attorney for Plaintiff
1723 Broadway
Little Rock, AR 72206
(501) 374-3758
Arkansas Bar No.:   64046


s/ Willard Proctor, Jr.
Willard Proctor, Jr.
Attorney for Plaintiff
2500 South State Street
Little Rock, AR 72206-2162
(501) 378-7720
Arkansas Bar No.:   87136
willard@wpjrlaw.com


s/ Lawrence Walker
Lawrence Walker
Attorney for Plaintiff
1723 Broadway
Little Rock, AR 72206
(501) 374-3758
Arkansas Bar No.:   2012042